H266diaa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                             16 MJ 8150(WHP)

LUIS DIAZ, JR., and LUIS
JAVIER DIAZ,

               Defendants.

------------------------------x

                                     New York, N.Y.
                                     February 6, 2017
                                     4:00 p.m.

Before:

                HON. WILLIAM H. PAULEY III,

                               District Judge

                       APPEARANCES
PREET BHARARA
    United States Attorney for the
    Southern District of New York
JENNIFER L. GACHIRI
    Assistant United States Attorney

VINCENT FLYNN, ESQ.
    Attorney for Defendant Diaz Jr.

GEORGE VILLA, ESQ.
JOSE QUINON, ESQ.
    Attorneys for Defendant Diaz

```
 1               (In open court; case called)
 2               THE LAW CLERK:  Appearances by the Government.
 3               MS. GACHIRI:  Jennifer Gachiri for the government.
 4               THE COURT:  Good afternoon, Ms. Gachiri.
 5               THE LAW CLERK:  For defendants.
 6               MR. VILLA:  Good afternoon, your Honor.  George Villa
 7    and Vincent Flynn for Luis Diaz, Jr., who is before the Court.
 8               THE COURT:  Good afternoon to you, Mr. Flynn.
 9               MR. QUINON:  Good afternoon, your Honor.  Jose Quinon
10    on behalf of Luis Javier Diaz, who is present before the Court.
11               THE COURT:  I note the presence of both defendants at
12    counsel table.  This matter is on for an initial appearance
13    before the Court.
14               Let me begin with an arraignment.  I would ask Luis
15    Diaz, Jr., to stand.
16               Are you the defendant Luis Diaz, Jr.?
17               DEFENDANT DIAZ, JR.:  Yes, I am sir.
18               THE COURT:  Have you seen a copy of the indictment in
19    this case?
20               DEFENDANT DIAZ, JR.:  Yes, I have.
21               THE COURT:  Have you discussed it with your attorney?
22               DEFENDANT DIAZ, JR.:  Yes, we have.
23               THE COURT:  Do you waive my reading of the indictment
24    word for word here in open court?
25               DEFENDANT DIAZ, JR.:  Yes.
```

1        THE COURT: How do you plead to the charges by the
2  United States against you in the indictment, guilty or not
3  guilty?
4        DEFENDANT DIAZ, JR.: Not guilty.
5        THE COURT: Very well, sir. You may be seated.
6        Luis Javier Diaz, would you stand.
7        Are you the defendant, Luis Javier Diaz
8        DEFENDANT DIAZ: Yes.
9        THE COURT: Have you seen a copy of the indictment in
10 this case?
11       DEFENDANT DIAZ: Yes.
12       THE COURT: Have you discussed it with your attorney?
13       DEFENDANT DIAZ: Yes.
14       THE COURT: Do you waive my reading the indictment
15 word for word here in open court?
16       DEFENDANT DIAZ: Yes.
17       THE COURT: How do you plead to the charges by the
18 United States against you in the indictment, guilty or not
19 guilty?
20       DEFENDANT DIAZ: Not guilty.
21       THE COURT: Very well. You may be seated.
22       So, Ms. Gachiri, what is the nature of the charges
23 against the defendant and what discovery does the government
24 have to provide to their counsel?
25       MS. GACHIRI: So this case involves the operation of

H266diaa

an unlicensed money transmitting business.  The defendants controlled a company in Doral, Florida known as Miami Equipment that would generate false and fraudulent paperwork in order to mask its movement of money from individuals and entities outside the United States to bank accounts that were located in the United States and elsewhere.  The company was not licensed as required by the State of Florida or with fin-syn, which allowed it to escape certain requirements such as filing CTRs and SARS.  The defendants are also charged with a money laundering conspiracy and international money laundering.

The discovery in this case consists primarily of 46 boxes that were seized from the defendants' businesses pursuant to a search warrant.  Those boxes were returned to the defendants prior to charging.  There are certain items of outstanding discovery which --

THE COURT:  I am sorry.  Did you say those boxes were returned?

MS. GACHIRI:  That's correct.  Prior to charging.  That is the vast bulk of discovery.  There are certain --

THE COURT:  I assume the government made copies?

MS. GACHIRI:  Yes, your Honor.

THE COURT:  All right.

MS. GACHIRI:  There are certain outstanding items of discovery that the government can produce within a week, including search warrant affidavits, bank records and e-mails

H266diaa

that were seized pursuant to a search warrant.  There were other items of outstanding discovery that the government can produce within 30 days, including export and visa records.  So the government's proposal would be to produce that discovery within 30 days to allow the defense time to review that discovery and then return here in 60 days to report back to the Court.

THE COURT:  Are there any statements by either of the defendants in custody?

MS. GACHIRI:  I will report back to the Court on that point.  If there are, if statements were made in connection with their rest on December 20th, the government will produce those.

THE COURT:  Those should be produced forthwith if they exist.

MS. GACHIRI:  Will do, your Honor.

THE COURT:  Does the government anticipate any superseder here?

MS. GACHIRI:  Not at this stage, your Honor.

THE COURT:  Assuming this case were to go to trial, what does the government estimate the length of its case to be?

MS. GACHIRI:  The outer bound would be two weeks, your Honor, but likely closer to one.

THE COURT:  Thank you very much, Ms. Gachiri.

Who wishes to be heard on behalf of the defendants?

1            MR. VILLA:  Your Honor, George Villa.

2            What we got from the government were not the actual

3    boxes.  What the government did is they made copies of the

4    documents in the boxes into a CD and those CDs were provided to

5    us.  Now, we've been able to open most of them, but we do have

6    some problems with some of the other CDs.

7            THE COURT:  Is there one CD per box?

8            MR. VILLA:  I am not sure, your Honor.  Everything was

9    copied and I think they provided maybe three or four CDs.  I

10   know we were able to open two of them, but we had issues and

11   are still having issues with the other two CDs.

12           THE COURT:  Can you give me some sense of how many

13   documents we are talking about that are in these 46 boxes or on

14   these four CDs?

15           Anyone?  Perhaps the government would be in the best

16   position to know.

17           MS. GACHIRI:  I am not in a position to estimate the

18   number of gigabytes, your Honor, but it is a significant amount

19   of material.

20           MR. VILLA:  Judge, it's a lot.  Because it consists of

21   documents that were generated by the business.  It's also

22   documents of bank records, documents by the banks, and so

23   forth.  So we're talking a lot.  It also includes e-mails that

24   the defendants wrote from their company.  So we're talking

25   about a lot of documents.

Case 1:16-mj-08150-UA   Document 13   Filed 03/23/17   Page 7 of 12    7
H266diaa

|   |   |
|---|---|
| 1 | MS. GACHIRI: I would add that it includes debit |
| 2 | confirmations and invoices. |
| 3 | MR. QUINON: Your Honor, Jose Quinon on behalf of Luis |
| 4 | Javier Diaz. |
| 5 | I came into the case a little bit later than other |
| 6 | counsel. I have not received yet any of those CDs. I look |
| 7 | forward to receiving them. I can tell you that I think it is |
| 8 | going to be -- going through discovery will require time and |
| 9 | resources on behalf of the defendant for the following reasons: |
| 10 | The business is not -- I heard the recitation of counsel for |
| 11 | the government. The business was an ongoing business that has |
| 12 | been in business for a long time. It is the sale of heavy |
| 13 | equipment business that has been in place for a long time, run |
| 14 | by the family. Additional family members work in this business |
| 15 | and have worked for a lot of years. As part of their services |
| 16 | to clients, there were some monies that had been transmitted. |
| 17 | So there is going to be issues in relation to this case when we |
| 18 | go through the discovery what is the history with the different |
| 19 | clients and how many pieces of equipment they sold in the past. |
| 20 | It's going to get very tedious in terms of discovery |
| 21 | and we're going to have to go through all those boxes because |
| 22 | there are bank records as well. So this really turns out to be |
| 23 | a case that is going to take some doing financially to find out |
| 24 | the movement of money of different transactions and that takes |
| 25 | time to do that. It is forensic work that is tedious but |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  necessary to do in a case like this, but I just wanted to bring
2  that to your attention, sir.
3          THE COURT:  I am going to adopt the government's
4  schedule for discovery because I think it's a reasonable one,
5  that within seven days the government will produce the search
6  warrant applications and the other materials that were
7  described by counsel.  Certainly I think the government should
8  confer immediately with defense counsel to find out what the
9  problem is with accessing the information on some of these CDs.
10 You should get copies of the CDs to Mr. Quinon for his review.
11         With respect to the export and visa records, I think
12 you said that they could be produced within 30 days?
13         MS. GACHIRI:  That's correct, your Honor.
14         THE COURT:  Where do those records come from?  Are
15 they records of an agency of the government?
16         MS. GACHIRI:  My understanding is that certain of the
17 records will be from CBP.  It is my understanding certain of
18 the records will be from that agency but that we can produce
19 them all within 30 days.
20         THE COURT:  So assuming then that all of this material
21 is produced by the government by March 6th, how much time would
22 the defendants like to review that information in order to
23 determine what motions, if any, the defendants want to make?
24         MR. QUINON:  Judge, possibly 60 days and the reason
25 for that is going to be like I said before it is going to be

complex of all the transactions.  So 60 days would be what we would ask for.

THE COURT:  Look, I will put it down for a conference on April 28th.  Is that sufficient?  It's not quite 60 days but...

MR. QUINON:  That will do, Judge.

THE COURT:  At that time what I would anticipate or what the parties should anticipate is that you should be in a position to tell me what motions, if any, you want to make prior to trial.  I will set a briefing schedule for those motions and I will select a trial date in the case.

In the meantime, if there is any issue that arises regarding discovery, please communicate with me by letter because I am putting it over for a significant period of time and when we all get together on April 28th, I don't want to hear that somebody couldn't open a CD or that somehow despite the government's best efforts the export and visa records still haven't been fully produced.  So if 30 days from now there is not complete compliance with the government's production, I want to be alerted to it so that we can move this case forward.

I take it both defendants reside in the Southern District of Florida?

MR. QUINON:  Yes, your Honor.

THE COURT:  I have just reviewed some supplemental reports from Pretrial Services and I had a question.  At least

one of the defendants holds two passports, one from Spain and one from the United States.  Have both defendants surrendered all their passports?

      MR. VILLA:  Yes, your Honor, except for the one from Spain.  That will be surrendered tomorrow as soon as we get back.

      THE COURT:  It will be surrendered to pretrial down in Florida?

      MR. VILLA:  Yes.  I think that is probably the easiest way to do it.  The U.S. passports have been surrendered and we have the receipts for those.

      THE COURT:  Are there any other issues that counsel want to raise this afternoon?

      MR. QUINON:  Just the issue with an oral motion to be admitted pro hac vice and then we'll follow up through the ECF.

      THE COURT:  Of course.  I heard you today and of course it will be my pleasure to grant the application.  I grant the applications for today, but you'll file the appropriate applications with the Clerk's Office and join the bar of the mother court as some legal cognoscente refer to it.

      MR. VILLA:  That will be for Mr. Flynn and myself as well.

      THE COURT:  Very well.  You can simply submit those pro hac vice applications then on the docket.  I guess the criminal docket was just opened.  It's bereft of useful

H266diaa

1     information for me at the moment, but I am confident the clerks
2     will catch up in the Clerk's Office with the entries.
3                Anything further?
4                MS. GACHIRI:  The government moves for the exclusion
5     of time between now and April 28th.
6                THE COURT:  Yes.  What are the defendants' respective
7     views concerning the exclusion of time between now and
8     April 28th, 2017?
9                MR. QUINON:  We have no objection your Honor.
10               MR. VILLA:  No objection, your Honor.
11               THE COURT:  Since this continuance is due to the
12    government's need to provide the voluminous discovery to the
13    defendants and the defendants' need to review all of that
14    discovery in order to determine what motions, if any, they wish
15    to make, I perspectively exclude the time from today until
16    April 28th, 2017 from Speedy Trial Act calculations.  I find
17    that this continuance serves to ensure the effective assistance
18    of counsel and prevents any miscarriage of justice.
19    Additionally, I find that the ends of justice served by such a
20    continuance outweigh the best interest of the public and each
21    of these defendants in a speedy trial pursuant to 18, U.S.C.,
22    Section 3161.
23               By the way, I will set this matter down on April 28th
24    at 2:30 in the afternoon.
25               Will that be convenient for counsel?

H266diaa

1           MR. QUINON:  Yes, sir.  That's works.
2           THE COURT:  I understand that you are all traveling
3    from Florida.
4           MR. QUINON:  Yes, your Honor.
5           THE COURT:  So I am prepared to put it down at any
6    particular time that you want that is most convenient so that
7    you can minimize your travel dislocations.
8           MR. QUINON:  I think that is going to work out.  This
9    morning we woke up at 3:30 in the morning.  At my age I can't
10   do that too many times.
11          THE COURT:  That's the point.  So --
12          MR. QUINON:  2:30, Judge.
13          THE COURT:  2:30 is fine?
14          MR. QUINON:  Yes.
15          MR. VILLA:  Yes, Judge.
16          THE COURT:  Thank you all for coming in.
17          MR. VILLA:  Thank you, your Honor.
18          MR. QUINON:  Thank you.
19          MR. FLYNN:  Thank you.
20                              o0o
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300